Michael A. Dinges, Asst. Dist. Atty., Williamsport, for Commonwealth, appellant.

Nicole J. Spring, Williamsport, for appellee.

Before CIRILLO, President Judge Emeritus, and BECK and BROSKY, JJ.

---

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**John Robert THOMPSON.**

Superior Court of Pennsylvania.

Submitted Aug. 25, 1997.

Filed Oct. 31, 1997.

CIRILLO, President Judge Emeritus:

The Commonwealth appeals from an order entered in the Court of Common Pleas of Lycoming County dismissing the charges against appellee John Robert Thompson. We reverse and remand for sentencing.

On August 7, 1995, Thompson pled guilty to theft by unlawful taking, theft by failure to make required disposition of funds, and receiving stolen property. After accepting the plea, the trial court scheduled sentencing for September 26, 1995, before the Honorable Kenneth D. Brown. Thompson's case, how-

ever, was never actually listed for sentencing. On June 11, 1996, Thompson filed a motion to dismiss alleging that he was not sentenced within the requisite 60 days of his guilty plea pursuant to Pa.R.Crim.P. 1405 and the dictates of *Commonwealth v. Thomas,* 449 Pa.Super. 646, 674 A.2d 1119 (1996). Thompson's motion was heard on June 21, 1996, before the Honorable Clinton W. Smith, President Judge. President Judge Smith determined that there was no good cause for Thompson's sentencing delay and granted Thompson's motion to dismiss pursuant to *Thomas, supra.* The Commonwealth appealed.

The following issue has been raised for our consideration:

> Did the trial court err in granting the defendant's motion to dismiss the charges for failure to sentence the defendant within 60 days of his conviction?

Rule 1405 provides as follows:

> A. Time for sentencing.
>
> (1) Except as provided by Rule 1403.B [regarding psychiatric or psychological examinations], sentence in a court case shall ordinarily be imposed within 60 days of conviction or the entry of a plea of guilty or nolo contendere.
>
> (2) When the date for sentencing in a court case must be delayed, for good cause shown, beyond the time limits set forth in this rule, the judge shall include in the record the specific time period for the extension.

Pa.R.Crim.P. 1405(A)(1),(2).

In *Commonwealth v. Thomas,* 449 Pa.Super. 646, 674 A.2d 1119 (1996), the appellant was convicted of indirect criminal contempt. Appellant filed post-verdict motions, which were deemed inappropriate because Pa.R.Crim.P. 1410 abolished post-verdict motions and now requires that such motions be filed after sentencing. Nonetheless, 73 days later, the trial court heard and denied the appellant's post-verdict motions. Subsequently, 111 days after conviction, the court sentenced appellant to six months' probation. A majority of this court held that the 73 day delay in disposing of the post-verdict motions did not constitute "good cause" warranting

an extension of the 60 day time limit for sentencing. Importantly, we determined that "to effect the purpose of Rule 1405, we are constrained to vacate appellant's sentence because the trial court erred when it sentenced appellant 111 days after his conviction without 'good cause' for the delay." *Id.* at 652, 674 A.2d at 1122 (emphasis added).

Recently, however, in *Commonwealth v. Anders,* 699 A.2d 1258 (Pa.Super.1997) (*en banc*), this court expressly overruled *Thomas* "to the extent that it holds that discharge is an appropriate remedy for a violation of Rule 1405(A)." *Id.,* at 1262. In *Anders,* the appellant pleaded guilty to one count of driving under the influence of alcohol. The court administrator scheduled appellant's sentencing for May 23, 1996. The trial court ordered a pre-sentence report to be completed by June 25, 1996, sixty days after the entry of appellant's guilty plea. *Id.,* at 1260. The court administrator then rescheduled appellant's sentencing hearing for August 1, 1997, thirty-seven days after the Rule 1405(A) sentencing deadline. The record provided no satisfying explanation for the delay. On the sentencing date, the appellant moved for discharge pursuant to Rule 1405(A). The trial court denied the motion without comment. *Id.,* at 1261.

Initially, the *Anders* court determined that appellant was not timely sentenced under Rule 1405(A).

> We read this rule and the comments thereto to require that the trial court first make a finding of good cause, and then reschedule defendant's sentencing to accommodate the specific good-cause delay. In the instant case, the trial court made no finding of good cause for delay. The court administrator simply rescheduled appellant's sentencing date without explanation. For this reason alone we find that the trial court violated Rule 1405(A).

*Id.,* at 1261. Indeed, the official comment to Rule 1405(A) states that section "(A)(2) is not intended to sanction pro forma requests for continuances. Rather, it permits the judge to extend the time limit for sentencing under extraordinary circumstances only." Com-

ment, Pa.R.Crim.P. 1405. The comment further reveals that "such extensions are intended to be the exception rather than the rule[.]" Comment, Pa.R.Crim.P. 1405. In interpreting the rule and its comment, the *Anders* court noted, "[a]t the very least, we read this rule to require that the delay (1) arise from a specific, articulable cause which is (2) not attributable to the Commonwealth's own negligence or deliberate misconduct." *Anders*, at 1262 n. 4.

The *Anders* court went on to analyze the critical question of whether discharge is an appropriate remedy for a Rule 1405(A) violation. This court first noted that Rule 1405 does not provide any remedy, much less the ultimate remedy of discharge, for its violation. *Id.*, at 1258, 1262 (citing *Thomas*, *supra*, Popovich, J., dissenting). Taking the analysis one step further, the *Anders* court stated:

> *Thomas* also ignores and conflicts with the framework our case law has developed for analyzing claims of untimely sentencing. Our courts have recognized that a delay in sentencing may implicate two constitutional rights: the right to a speedy trial as guaranteed by the Sixth Amendment,[1] and the right to a direct appeal as guaranteed by the Due Process Clause of the Fourteenth Amendment.[2] In the absence of a statute or further guidance by the supreme court to the contrary, we hesitate to grant relief for delays in sentencing unless the defendant's constitutional rights have been violated.

*Id.*, at 1262 (citations omitted). Prior to the enactment of the current Rule 1405, there did not exist a definitive rule that imposed a limit on the length of time which may elapse between a conviction or guilty plea and the sentencing of a defendant. *Id.*, at 1263. Rather, "[o]ur courts were left to make *ad hoc* decisions as to when a delay in sentencing warranted further inquiry into a potential constitutional violation." *Id.*, at 1263. Thus, while the present Rule 1405 provides us with a clear, uniform standard, it does not, however, "alter our well-established inquiry as to whether a given delay in sentencing violates a defendant's right to a speedy trial or to due process." *Id.*, at 1263–64.

> Because rule 1405(A) sets forth a specific time limit for sentencing where previously there was none, yet leaves the rest of our speedy sentencing analysis unchanged, we conclude that ... [it is necessary to determine ] whether the delay itself its sufficient to trigger further inquiry. **Specifically, if the defendant is sentenced more than 60 days after conviction or the entry of a plea of guilty or *nolo contendere*, *and* the delay after the 60th day is not justified by good cause shown, then the delay is sufficient to trigger further inquiry. Only then will the court analyze the other factors of the defendant's constitutional claim....** It follows from the above analysis, and from the fact that Rule 1405(A) does not contain a separate enforcement provision, that there is no remedy per se for a Rule 1405(A) violation; Rule 1405(A) forms just one part of the court's analysis as to when a defendant's right to a speedy trial or to due process has been violated.

*Id.*, at 1264 (emphasis added).[3]

In summary, the enactment of rule 1405(A) has sent a clear message that trial courts

---

1. To determine whether a defendant's speedy trial right has been violated, it must initially be determined whether the delay is sufficient to trigger further inquiry; if so, the reviewing court must balance the length of the delay with the reason for such delay, the defendant's timely assertion of his right to a speedy trial, and any resulting prejudice to the interests protected by the speedy trial right. *Anders*, at 1263 (citing *Commonwealth v. Glover*, 500 Pa. 524, 528, 458 A.2d 935, 937 (1983)).

2. A delay in sentencing correspondingly delays an appeal, and the right to promptness in appeals is framed in terms of due process. *Anders*,

at 1262. (citing *Commonwealth v. Glass*, 526 Pa. 329, 586 A.2d 369 (1991)). A defendant must show that a state's action in causing the delay was fundamentally unfair to establish a due process violation. *Anders*, at 1262 (citing *Commonwealth v. Greer*, 382 Pa.Super. 127, 554 A.2d 980 (1989)).

3. The court went on to state that in order to determine whether a defendant's speedy trial or due process rights have been violated, the trial court should consider: (1) the length of the delay falling outside of Rule 1405(A)'s 60 day-and-good-cause provisions, (2) the reason for the improper delay, (3) the defendant's timely or

should sentence defendants within 60 days or account for the delay by showing good cause. *Id.*, at 1264. Where a trial court unaccountably delays sentencing, or abuses its discretion in determining what constitutes "good cause" for delay, the trial court will be faced with a colorable appellate challenge on constitutional grounds. *Id.*

The *Anders* court ultimately concluded that because the appellant failed to present to the trial court or argue on appeal that his speedy trial and/or due process rights were violated, he waived this challenge, and his judgment of sentence was affirmed. *Id.* (citing *Commonwealth v. McMillan,* 376 Pa.Super. 25, 39, 545 A.2d 301, 308 (1988) (issue has not been preserved in a manner to warrant retroactive application of the change in the law where the reasoning of the new decision was urged as the basis for relief in the trial court)).

Turning to the case at hand, we must first make a finding as to whether the trial judge abused his discretion in determining that "good cause" existed for the court's failure to sentence Thompson within 60 days of the entry of his guilty plea. At the hearing on Thompson's motion to dismiss, President Judge Smith stated:

> Contrary to the finding in the other cases, the Court finds that **good cause has *not* been shown.** My extended illness was not any reason whatsoever why these matters were not scheduled. There was a data entry error made. I don't feel that that is good cause under the rule[.] (emphasis added).

Accordingly, President Judge Smith entered an order dismissing Thompson's charges.[4]

In his Pa.R.A.P.1925(b) opinion, however, President Judge Smith enunciates a position quite different from that expressed at the hearing:

In the present case, **the trial court had good cause for the delay.** Defendant entered his plea on August 7, 1995. In June of 1995, prior to taking the plea, this court began treatment for lymphoma. The court underwent chemotherapy from June 6, 1995, to August 22, 1995, and radiation from October 2, 1995, to October 25, 1995. During that time, the court was extremely ill and many days the court was only able to work partial days. For approximately six (6) to seven (7) weeks, the court was out of the office completely. Lycoming County has four (4) judges; two (2) are assigned to the civil court and two (2) are assigned to the criminal court at all times. The two judges assigned to the criminal court had individual case lists. During this court's absence, the Honorable Kenneth D. Brown, who was also assigned to the criminal court, helped with this court's case list. In the instant case, defendant agreed to be sentenced by Judge Brown. However, due to a data entry error, Defendant's sentencing was not scheduled in front of Judge Brown. [Two substitute judges] came to aid with the case load[.] ... Upon the court's recuperation, a significant number of cases remained to be sentenced....

In January of 1996 this court was assigned to the civil side of the court. Originally no dates were scheduled in this court's calendar during its civil term to handle criminal sentencings.... The court's absence due to illness created a great backlog in disposing of cases. Therefore, even though Defendant's sentencing was not scheduled due to a data entry error, he may not have been sentenced within sixty (60) days of this plea for good cause.

Data entry errors are not routine occurrences in Lycoming County.... Defendant filed his Motion to Dismiss before any date had been set for his sentencing.

---

untimely assertion of his rights, and (4) any resulting prejudice to the interests protected by his speedy trial and due process rights. *Anders*, at 1264 (citing *Glover, supra* ).

**4.** While the court made a finding that there was no good cause for the sentencing delay, it clearly did not believe that discharge was the proper remedy, as evidenced by its June 21, 1996 order

which provides, in part, the following: "[I]t is ORDERED AND DIRECTED that all charges contained in the above-captioned matter are dismissed under [Pa.R.Crim.P.] 1405 and the ruling in the case of *Commonwealth [v.] Thomas,* [449 Pa.Super. 646, 674 A.2d 1119 (1996)]. This Court feels that *Thomas* is wrongly decided, but that it is constrained to follow that precedent."

Even though the court had good cause for the delay, Defendant's sentencing was not scheduled prior to his filing the Motion to Dismiss. Based on these facts, the court felt constrained to follow the holding in *Thomas* [.] (emphasis added).

Despite the trial court's initial determination that no good cause existed for the sentencing delay, our review of the exhaustive reasons set forth by the court in its 1925(b) opinion lead us to the conclusion that there was, in fact, good cause for Thompson's sentencing delay. The situation described by President Judge Smith embodies the meaning of "extraordinary circumstances" for purposes of Rule 1405(A). Comment, Pa. R.Crim.P. 1405; *Anders, supra.* Clearly, the delay "a[rose] from a specific, articulable cause," namely, President Judge Smith's unfortunate illness. *Anders,* at 1262 n. 4. The serious illness was obviously "not attributable to the Commonwealth's own negligence or misconduct." *Anders,* at 1262 n. 4. It appears that while every effort was made to remedy the backlog that had developed as a result of the judge's illness, (i.e. the use of substitute judges) the situation clearly became overwhelming and beyond the court's control. A data entry error, in and of itself, might not rise to the level of good cause necessary to justify a delayed sentencing. Had it not been for the extraordinary backlog that developed as a result of the judge's illness, however, chances are an administrative error would not have been made. According to President Judge Smith, data entry errors are not common occurrences in Lycoming County. Thus, to the extent that the trial court made an initial finding of no good cause for the sentencing delay, we find that it abused its discretion. *Anders, supra.* Rather, we are persuaded by the court's reasoning in its subsequent 1925(b) opinion; our review of such leads us to the conclusion that there indeed existed good cause for Thompson's sentencing delay.[5]

Because we agree that good cause/extraordinary circumstances existed for Thompson's sentencing delay, we need not go further in our analysis. *Anders, supra.*

Order reversed. Remanded for sentencing. Jurisdiction relinquished.

---

5. We caution the court that the comment to Rule 1405(A) provides that an extension granted for sentencing must be for a specific time period, the judge must include in the record the length of time of the extension and, once an extension has been granted, some provision should be made to monitor the extended time period to insure prompt sentencing when the extension period expires. Here, the trial court's "good cause" conclusions were made in response to the defendant's motion for discharge. The rule, however, appears to contemplate a burden on the trial court to assure prompt sentencing, as opposed to reliance on the defendant to allege a sentencing delay.